**In re Keith JOBE.**

No. 07–00–0507–CV.

Court of Appeals of Texas,
Amarillo.

Feb. 2, 2001.

Fletcher & Springer, W. Andrew Messer, Kenneth J. Lambert, Dallas, Anita Burgess, City Atty., Jeff Hartsell, Jennifer Bassett, Asst. City Attys., Lubbock, for appellant.

Dunn & Walker, Charles Dunn, Lubbock, for appellee.

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

BOYD, Chief Judge.

In this proceeding, relator Keith Jobe (Jobe) asks us to issue a writ of mandamus requiring the Honorable J. Blair Cherry, Jr., Judge of the 72nd District Court of Lubbock County, to vacate two orders he has issued. The effect of these orders was to compel the production of certain documents and information which, Jobe asserts, are statutorily made confidential and, therefore, are not discoverable. For reasons we later state, relator's petition is conditionally granted.

The facts underlying this petition concern the actions of Jobe, a former Lubbock Police Officer. Barbara Kearse (Kearse), as next friend of Ray Kayla Fairly, filed the lawsuit underlying this proceeding. In her suit, Kearse alleged that Jobe, while acting as a security officer for Macherich Lubbock Limited Partnership d/b/a South Plains Mall Associates, Ltd., intentionally inflicted emotional distress upon Kearse's daughter, Fairly.

Sometime during the summer of 1999, Lubbock Police Chief Ken Walker had occasion to investigate Jobe's conduct. That investigation resulted in an "Order for Suspension Without Pay and Statement of Charges," which was issued on May 16, 2000. Pursuant to city policy, the order was placed in Jobe's civil service (a) file.[1] In his 36 page order, Walker detailed the charges and the reasons why he found probable cause to support each charge. Ultimately, Jobe received a 16 day suspension and later resigned from the police department effective January 2, 2000.

During discovery in the underlying suit, Kearse subpoenaed Walker, Sergeant Robert Ferguson and Detective Leland Hufstedler to appear for oral depositions and to produce documents which would include the investigative materials leading to the suspension order that had been placed in the (g) file. The City of Lubbock (the City) then sought a protective order from the trial court. In doing so, it pointed out that pursuant to city policy, only the suspension order was placed in Jobe's (a) file, and all the remaining documents pertaining to Jobe's investigation not placed in the (a) file remain in the (g) file and, by virtue of Texas Government Code section 143.089(g), they were privileged and confidential. After hearing the City's application for protective order, the trial court granted the protective order as to any materials related to alleged misconduct by Jobe which did not result in disciplinary action, but required the City to produce "any letter, memorandum or document [in the (g) file] related to any misconduct of Defendant Keith Jobe if the letter, memorandum or document resulted in disciplinary action by the Lubbock Police Department." The trial court later entered an order compelling the production of the documents upon which it had refused a protective order.

■ Initially, the City poses a question as to whether relator followed the proper procedure in attempting to obtain the materials. The City sought and obtained an attorney general's opinion as to the confidentiality of the material remaining in the (g) file. In his opinion, the attorney general concluded that the material contained in the (g) file is privileged and must be withheld. In raising its question, the City,

---

1. In this opinion, we will have a significant discussion of two types of personnel files maintained pursuant to Section 143.089 of the Texas Local Government Code. The first type, a "civil service file," will be referred to as an "(a)" file kept pursuant to Section 143.089(a). The second, an "internal affairs file," will be referred to as a "(g)" file kept pursuant to Section 143.089(g). In this opinion, we will set out in their entirety, the relevant provisions of Section 143.089.

citing *Texas Department of Public Safety v. Gilbreath,* 842 S.W.2d 408 (Tex.App.—Austin 1992, no writ), and *Felix v. Thaler,* 923 S.W.2d 650 (Tex.App.—Houston [1st Dist.], no writ) argues that in view of the attorney general's opinion, the proper procedure would have been for relator to seek mandamus directly against it, rather than obtaining the trial court order compelling production.

However, in *Gilbreath,* the court noted that once the attorney general has rendered an opinion in instances in which allegedly public information is sought, the material is privileged and that opinion is subject to judicial review. 842 S.W.2d at 411–12. While the procedure referred to in the opinion was the possibility of review by way of mandamus, the thrust of the court's observation is that a decision to withhold is subject to judicial review. We see nothing in the opinion that would suggest the only acceptable method of judicial review would be by mandamus. The gist of the court's opinion in *Felix* is that if a mandamus review of a refusal to furnish material is sought, it must meet the same standards as any other mandamus proceeding. *Felix,* 923 S.W.2d at 651–54. Thus, there is nothing in either opinion suggesting that a trial court could not, in its discovery process, and in pursuance of a duly issued subpoena, order the production of information or documents by an employee of the record holder. In that connection, the Rules of Civil Procedure specifically provide that a nonparty may be required to appear for deposition and also to produce documents or other materials. Tex.R.Civ.P. 205.3.

Therefore, we decline to hold that the only way the validity of the City's position could be tested would be to bring a mandamus action directly against it. This is particularly true in this case where the City intervened in the trial court suit and invoked that court's power to determine whether or not it was entitled to a protective order. By doing so, the City sought, and has obtained, a judicial review of its right to withhold the requested material. As a nonparty, it was entitled to seek appellate review of the trial court's decision by this mandamus proceeding, which, of course, it has done.

Having held that the question of the propriety of the trial court's order is properly before us, we must now decide if the court's order requiring the production of the investigative materials generated by the Lubbock Police Department underlying the disciplinary action by it against Jobe, retained in the (g) file, was proper.

■■■ Mandamus is an extraordinary writ that should only be issued when the trial court clearly abused its discretion and there is no adequate remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833 (Tex. 1992). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* at 839. This standard, however, may have different applications in different circumstances. With respect to the resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court and may not disturb the trial court's judgment unless that judgment is shown to be arbitrary and unreasonable. *Id.* at 839–40.

■■■ However, the review of a trial court's determination of the legal principles controlling its ruling is much less deferential. *Id.* at 840. A trial court has no "discretion" in determining what the law is or in applying established law to the facts before it. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal

by extraordinary writ. *Id.* Because our task in this case is to determine whether the trial court correctly interpreted Texas Government Code section 143.089, we treat the trial court's decision with limited deference. *See Oyster Creek Financial Corp. v. Richwood Investments II, Inc.,* 957 S.W.2d 640, 647 (Tex.App.—Amarillo 1997, pet. denied).

In relevant part, section 143.089 reads as follows:

### § 143.089. Personnel File.

(a) The director or the director's designee shall maintain a personnel file on each fire fighter and police officer. The personnel file *must* contain any letter, memorandum, or document relating to:

(1) a commendation, congratulation, or honor bestowed on the fire fighter or police officer by a member of the public or by the employing department for an action, duty, or activity that relates to the person's official duties;

(2) any misconduct by the fire fighter or police officer if the letter, memorandum, or document is from the employing department and if the misconduct resulted in disciplinary action by the employing department in accordance with this chapter; and

(3) the periodic evaluation of the fire fighter or police officer by a supervisor.

(b) A letter, memorandum, or document relating to alleged misconduct by the fire fighter or police officer may not be placed in the person's personnel file if the employing department determines that there is insufficient evidence to sustain the charge of misconduct.

(c) A letter, memorandum, or document relating to disciplinary action taken against the fire fighter or police officer or to alleged misconduct by the fire fighter or police officer that is placed in the person's personnel file as provided by Subsection (a)(2) shall be removed from the employee's file if the commission finds that:

(1) the disciplinary action was taken without just cause; or

(2) the charge of misconduct was not supported by sufficient evidence.

\* \* \*

(e) The fire fighter or police officer is entitled, on request, to a copy of any letter, memorandum, or document placed in the person's personnel file. The municipality may charge the fire fighter or police officer a reasonable fee not to exceed the actual cost for any copies provided under this subsection.

(f) The director or the director's designee may not release any information contained in a fire fighter's or police officer's personnel file without first obtaining the person's written permission, unless the release of the information is required by law.

(g) A fire or police department may maintain a personnel file on a fire fighter or police officer employed by the department for the department's use, but the department may not release any information contained in the department file to any agency or person requesting information relating to a fire fighter or police officer. The department shall refer to the director or the director's designee a person or agency that requests information that is maintained in the fire fighter's or police officer's personnel file.

Tex.Local Gov't Code Ann. § 143.089 (Vernon 1999).

 Our answer to the questions before us requires a statutory construction of relevant portions of section 143.089. A court's primary objective in construing a statute is to determine and give effect to

the legislative intent. *Liberty Mutual Insurance Company v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex.1998). That purpose is accomplished by first looking at the plain and common meaning of the statute's words. *Id.* In applying the plain and common meaning of the language in a statute, courts may not, by implication, enlarge the meaning of any word in the statute beyond its ordinary meaning. The reason for the rule is that such implications are inappropriate when legislative intent may be gathered from a reasonable interpretation of the statute as it is written. *Labrador Oil Company v. Norton Drilling Company,* 10 S.W.3d 717, 719 (Tex.App.—Amarillo 1999, n.w.h.) (*citing Monsanto Co. v. Cornerstones Municipal Utility District,* 865 S.W.2d 937, 939 (Tex.1993)). Indeed, by statute we are instructed that in our construction, *inter alia,* it is presumed that the entire statute is intended to be effective, a just and reasonable result is intended, a result feasible of execution is intended, and that the public interest is favored over private interest. Tex.Gov't Code Ann. § 311.021 (Vernon 1998).

■ Jobe and the City correctly assert that the clear intent of subsection (g) is to protect the privacy interests of police officers and fire fighters. However, it is equally clear that subsection (a)(2) of the statute is intended to protect the public by allowing it to discover if punishable misconduct of a police officer has occurred in the past, and the public has a legitimate interest in the reasons for a police officer's punishment. That interest is especially important because of the critical nature of the peace officer's occupation. Thus, the obvious legislative intent in its adoption of the statute is to explicate a method by which the interest of the public in making sure that no unfit person is employed as a peace officer but, at the same time, ensuring that innocent police officers are protected from unsubstantiated innuendos and accusations.

Indeed, in supporting Jobe's quest for mandamus, the City acknowledges that "the public obviously has a legitimate interest in the reasons for a public employee's suspension." However, reasoning that because the disciplinary order "sets out the facts, the specific violations committed by the officer and the punishment," the City claims that the objective has been accomplished here by the placing of the disciplinary action order in the (a) file. It further argues that if it were required to place in the (a) file the "mounds" of investigative materials, including complaints, interviews of possible witnesses and other research performed by the investigating officers, it would be detrimental to the investigative process. Further, it reasons, witnesses to an incident, including police officers, might be reluctant to get involved or fully cooperate with an investigation if they knew that their statements and opinions would be fully obtainable as they would be if included in the (a) file.

By its terms, subsection (a) of the statute provides that the personnel director or his designee, **shall** maintain a personnel file on each police officer or fire fighter and it **must** contain any letter, memorandum, or document relating to, as provided in subsection (2) "any misconduct by the fire fighter or police officer **if the letter, memorandum, or document is from the employing department and if the misconduct resulted in disciplinary action by the employing department ...**" (emphasis added). Subsection (f) of the statute sets out the procedure by which information contained in that personnel file may be released and includes situations such as the one before us in which "the release of the information is required by law."

Subsection (g) of the statute provides that a fire or police department, **may** maintain another personnel file **"for the department's use"** and, if the department elects to set up such a separate file, "the department may not release any information contained in the department file," but "shall refer to the director or the director's designee a person or agency that requests information that is maintained in the fire fighter's or police officer's personnel file." *See City of San Antonio v. Texas Attorney General,* 851 S.W.2d 946 (Tex.App.—Austin 1993, writ denied), and *Ealoms v. State,* 983 S.W.2d 853 (Tex.App.—Waco 1998, pet. ref'd).

■ It seems quite clear that the legislative intent as set out in the statute is that any letter, memorandum, or document which leads to a disciplinary action against a fire fighter or police officer **must** be included in the (a) file, if "the letter, memorandum, or document is from the **employing department**" (emphasis added). That limitation excludes supporting documents such as complaints, witness statements, and documents of like nature from individuals who were not in a supervisory capacity with the department.

With regard to a request for material placed in Jobe's (g) file, as we have noted, that subsection specifically provides that a (g) file is not required to be maintained, but if one is maintained, it is for the **department's** use, the material may not be released by the **department,** and any requests for information will be referred to the director or the director's designee.

In *City of San Antonio,* one of the two cases to which we have cited construing section 143.089(g), the court, noting that then Tex .Rev.Civ.Stat.Ann. art. 6252–17a, § 3(a)(1) (Vernon Supp.1992) [2] of the Open Records Act, provided that information deemed confidential by law, either constitutional, statutory, or by judicial decision, opined that "[t]o accommodate and preserve the legislative policy mentioned above (the discretionary power to maintain a section (g) file)," the director has exclusive power to make disclosure decisions as to the material in the (g) file. *City of San Antonio,* 851 S.W.2d at 949.

The court's decision in *Ealoms v. State,* the other case construing the statute, is also helpful. Although it is distinguishable because it involved the application of section 143.089 regarding a criminal defendant's due process right to certain personnel information rather than the section's relation to a subpoena *duces tecum* directed at obtaining the officer's subsection (g) file in a civil matter. In the course of its opinion, the *Ealoms* court noted and commented on the *City of San Antonio* decision. In doing so, the Waco court recognized the Austin court was reviewing section 143.089 in relation to the Open Records Act and noted its conclusion that if files kept under subsection (g) were intended to be confidential, there was no duty to disclose them and subsection (g) forbids the release of information maintained under that subsection to anyone under any circumstances. *Ealoms,* 983 S.W.2d at 858.

However, the *Ealoms* court concluded that the *City of San Antonio* rule was not always applicable in a criminal case because the right to review information under the Open Records Act is not as compelling as a defendant's right to material evidence in a criminal case. Because of that difference, but recognizing that the (g) file was privileged, the court held that it was proper for the trial court to make an in-camera review of the (g) file material to

**2.** Page 948, fn. 1. That provision was carried forward in the present Open Records Act and is now set out in Tex.Gov't Code Ann. § 552.101 (Vernon 1994).

determine if it included information that a defendant was entitled to discover. *Ealoms*, 983 S.W.2d at 859–60.

After considering the statute and the few authorities that have considered it, we conclude that in a civil case such as the one before us, as discussed in *City of San Antonio*, the general rule is that the material placed in a discretionary (g) file is for the benefit of the department. It is privileged and, with one exception, by statute, a director's decision not to release it is final. However, that rule is subject to the exception that if the (g) file contains a letter, memorandum, or document from the employing department relating to a police officer or fire fighter's misconduct that resulted in disciplinary action against the police officer or fire fighter, it **must** be placed in the officer's or fire fighter's (a) file. Thus, if the trial court's review power is properly invoked, it may make an in-camera inspection, subject to appellate review, to determine if that mandatory provision of the statute has been complied with. If the reviewing court determines there is material in the (g) file that should have been placed in the (a) file, that material is discoverable. We believe this construction of the statute fully accomplishes the legislative intent.

Because the trial court order in question here is broader than permissible under the statute, we conditionally grant relator's petition seeking mandamus. Because we are confident the trial court will withdraw the orders in question, the writ will issue only if he refuses to do so.