NO. 07-03-0023-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MARCH 25, 2005



______________________________




LARRY POSEY, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 100TH DISTRICT COURT OF CARSON COUNTY;



NO. 2991; HONORABLE DAVID M. MCCOY, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Appellant Larry Posey brings this appeal challenging the sufficiency of the evidence
supporting his conviction for the felony offense of engaging in organized criminal activity. 
Finding the evidence legally sufficient, we affirm.

 Appellant was charged in an indictment alleging that from July 12, 1999 through
December 31, 2001, he committed the felony offense of theft of property with an aggregate
value over $100,000 but less than $200,000 with the intent to "establish, maintain, or
participate in a combination" consisting of appellant and six other named individuals. The
indictment alleged appellant performed at least one of thirty-three listed acts of theft. (1) 
Appellant plead not guilty and the case was tried to a jury over three days in December
2002. The jury found appellant guilty and assessed punishment at ninety-nine years
confinement and a ten thousand dollar fine. The trial court assessed punishment in
conformity with the jury's verdict. Appellant timely perfected appeal from that judgment and
presents a single point assigning error to the trial court's denial of his motion for an
instructed verdict. 

 A motion for instructed verdict is a challenge to the legal sufficiency of the evidence. 
Coggin v. State, 123 S.W.3d 82, 89 (Tex.App.-Austin 2003, pet. ref'd). In reviewing the
legal sufficiency of the evidence, we recognize that the jury is the sole judge of the weight
and credibility of the evidence, and look at all the evidence in the light most favorable to
the verdict to determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 2789, 61 L.Ed. 2d 560, 573 (1979); Alvarado v. State, 912 S.W.2d
199, 207 (Tex.Crim.App. 1995); Griffin v. State, 614 S.W.2d 155, 159 (Tex.Crim.App.
1981). We measure the elements of the offense as defined by a hypothetically correct jury
charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). Such a charge is one
that accurately sets out the law, is authorized by the indictment, does not unnecessarily
increase the State's burden of proof or unnecessarily restrict the State's theories of liability,
and adequately describes the particular offense for which the defendant was tried. Id. The
standard is the same in both direct and circumstantial evidence cases. Burden v. State, 55
S.W.3d 608, 612-13 (Tex.Crim.App. 2001). The standard for legal sufficiency review
"gives full play" to the jury's responsibility "fairly to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." 
Jackson, 443 U.S. at 319; Sanders v. State, 119 S.W.3d 818, 820 (Tex.Crim.App. 2003). 

 Where, as here, the State's case is based in part on the testimony of an accomplice, 
a sufficiency review must incorporate the accomplice-witness rule stated in article 38.14
of the Code of Criminal Procedure. It provides "A conviction cannot be had upon the
testimony of an accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed; and the corroboration is not sufficient if it merely
shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon
1979). Application of that rule requires us initially to eliminate the accomplice testimony
from consideration and then examine the remaining portions of the record to see if there
is any evidence that tends to connect the accused with the commission of the crime. 
Solomon v. State, 49 S.W.3d 356, 361 (Tex.Crim.App. 2001). The corroborating evidence
need not be sufficient by itself to establish guilt. The accomplice-witness rule is not based
on federal or state constitutional notions of sufficiency, it simply requires "other" evidence
tending to connect the defendant to the offense. Id. 

 The offense of engaging in organized criminal activity is defined by section 71.02(a)
of the Penal Code. (Vernon supp. 2004). It provides, in relevant part, that a person
commits an offense if, with the intent to establish, maintain, or participate in a combination
or in the profits of a combination, he commits or conspires to commit theft. Id. Section
71.01 defines "combination" as "three or more persons who collaborate in carrying on
criminal activities[.]" Tex. Penal Code Ann. § 71.01(a) (Vernon 2003). 

 Viewing the allegations in the indictment against the statutory language, the
elements the State was required to prove were (1) the existence of a combination and (2)
that appellant committed theft, (3) with intent to participate in the combination or profits of
the combination. (2) See Hart v. State, 89 S.W.3d 61, 63-64 (Tex.Crim.App. 2002); Munoz
v. State, 29 S.W.3d 205, 208 (Tex.App.-Amarillo 2000, no pet.). To establish a
combination the State must show the members of the combination mutually agreed or
intended to work together. Munoz, 29 S.W.3d at 208. The agreement must be to the
commission of more than one offense or criminal episode. Nguyen v. State, 1 S.W.3d 694,
697 (Tex.Crim.App. 1999); Ross v. State, 9 S.W.3d 878, 882 (Tex.App.-Austin 2000, pet.
ref'd). Such agreements may, and almost necessarily must, be established by
circumstantial evidence. Munoz, 29 S.W.3d at 209.

 The State sought to show appellant was a member of a combination engaged in a
course of theft of vehicles and industrial equipment, the primary members of which were
Delbert Morris, Mark Byers, Vicki Hardy, Paula Cardosi, and appellant. Cardosi, whose
testimony is subject to the accomplice-witness rule, testified that in the summer of 2001
she, Morris and appellant would drive around Amarillo "almost everyday" looking for things
to steal. She recounted an instance when she was driving and appellant stole a Harley
Davidson motorcycle from a dealership and subsequently sold it to Morris. In a separate
incident when she was driving with appellant, he stole a motorcycle from a motel parking
lot. Cardosi testified she was with appellant when he stole two U-haul vehicles and sold
the contents to Morris. Cardosi said she made several trips with Morris and others to a
property in rural Carson County. The trips were made in the early morning hours for the
purpose of Morris's delivery of stolen vehicles for hiding and subsequent disassembly. 
Appellant did not participate in those trips. 

 Nathan Moore, also identified as an accomplice witness, testified he overheard a
conversation between appellant and Morris concerning appellant's sale of a silver Corvette
to Morris for "something like" $2,000. Moore agreed he heard appellant "say something
about" the car being stolen. Moore also said appellant sold to Morris a second silver
Corvette that appellant owned. 

 The State called Ellen Montieth concerning a brown Chevrolet truck purchased for
her by her parents. She testified a person named Randy Hutchinson took the truck keys
from her purse and left with her truck. Three days later she asked appellant to help
recover her truck and he agreed. Riding together they located the truck, broke into it, and
drove it to the home of a friend of appellant. Montieth testified appellant wanted the pickup
and told her to report the truck as stolen. She testified, "I told him not to, because it was
my parents . . . ." She believed he wanted the truck for parts to fix a truck he owned. 
Montieth did not agree to report the truck as stolen at that time, and when she returned for
the truck the next day it was gone. She later confronted appellant and asked him "why'd
you take my pickup?" He replied "I told you to report it stolen." 

 In November 2001, law enforcement officers executed a search warrant on the rural
Carson County property occupied by Byers and Hardy. At trial officers identified six
vehicles, or parts of vehicles, found on the property, each of which had been reported
stolen in Amarillo. Four of the vehicles were trucks, the others were a 1999 Pontiac
Firebird and parts of a 1984 Corvette. Ellen Montieth identified the truck shown in state's
exhibit six as the remains of her truck. Officers also identified a trailer, ditch digging
equipment, and skid steer loader found on the property as having been stolen in Amarillo.

 The State presented the testimony of Abel Siller, Jr., a "security threat group officer"
with the Texas Department of Criminal Justice, Institutional Division. Siller interviewed
appellant in connection with an investigation of threats made against appellant by other
prison inmates. During that interview appellant admitted to being part of a group that stole
vehicles from dealerships, particularly new pickup trucks and Harley Davidson motorcycles. 
He indicated to Siller he had stolen between forty and fifty vehicles. Siller further said
appellant told him that he had "current charges out of Carson County," that police had
found vehicles in Carson County but "law enforcement didn't have s--t on him because he
- the ranch didn't belong to him." On cross-examination, Siller acknowledged that
appellant did not tell him he had stolen any of the vehicles that were located in Carson
County.

 The evidence of the existence of a combination begins with Cardosi's testimony
relating collaboration in the theft of vehicles and other items, and in the transfer of stolen
vehicles from Amarillo to the Carson County property. Her testimony identified the
members of the combination and explicated their roles, providing evidence of a
combination by which appellant would steal vehicles and sell them, or the property they
contained, to Morris who would deliver the vehicles to Byers and Hardy for disassembly. (3) 
Cardosi's testimony concerning the roles of appellant and Morris in the combination was
supported by Moore's testimony that appellant agreed to sell a Corvette to Morris amid
discussion that it was stolen. The nature of the relationship between those two parties was
shown regardless whether the Corvette appellant sold to Morris was shown to be the same
one from which parts were found at the Carson County property.

 The parties do not address application of the accomplice-witness rule to the
evidence establishing a combination. Because the State is not required to show the
defendant was a member of the combination to support a conviction for engaging in
organized criminal activity, Hart v. State, 89 S.W.3d 61, 63 (Tex.Crim.App. 2002), the
evaluation of whether non-accomplice witness evidence "tends to connect the accused with
the commission of the crime," Solomon, 49 S.W.3d at 361, may not be applicable to that
element. In any event, the testimony of accomplices Cardosi and Moore concerning the
existence of the combination is corroborated by that of Siller, which includes appellant's
statement to Siller he was part of a group that stole forty to fifty vehicles. The number of
vehicles stolen supports an inference that the group's collaboration extended beyond a
single offense or criminal episode. See Nguyen, 1 S.W.3d at 697.

 The second and third elements required that the State prove appellant committed
at least one of the thirteen thefts included in the court's charge, with the intent to participate
in the combination or the profits of the combination. Appellant contends there is no
evidence he committed any of those thirteen thefts. (4) We disagree. No specific vehicle
Cardosi testified she witnessed appellant steal was discovered at the Carson County
property. But Montieth's testimony told of appellant's demonstrated ability to break into her
truck, his knowledge of its location shortly before it was taken, his instruction to her to
report the truck stolen and his desire to have the truck for parts. As noted, Montieth also
testified that, in response to her later accusation, "Why'd you take my pickup?" appellant
replied, "I told you to report it stolen." (5) Appellant's reply was an adoptive admission, see
Flores v. State, 84 S.W.3d 675, 685 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd)
(defendant's failure, during taped conversation with another, to deny previous extraneous
theft mentioned by the other or to deny in that conversation he knew to what other referred,
was evidence of guilt of extraneous theft), and, taken together with Montieth's other
testimony, provided evidence from which the jury rationally could conclude appellant was
responsible for theft of her truck. Given the evidence of the relationships among appellant,
Morris and Byers, the jury also could infer from the discovery of that truck, disassembled,
at the Carson County property that appellant's theft of the truck was with the intent to
participate in the combination.

 We find the evidence, viewed in the light most favorable to the verdict, as it must be,
sufficient to permit a rational jury to find each of the essential elements beyond a
reasonable doubt. We overrule appellant's sole issue on appeal and affirm the judgment
of the trial court.

 

 James T. Campbell

 Justice



Johnson, C.J., not participating. 



Do not publish.
1. In the charge submitted to the jury, the number of theft offenses alleged was
reduced to thirteen.
2. The State's brief mistakenly asserts appellant was charged with "conspiring with
several others to commit aggregated theft." Although Section 71.02(a) authorizes a charge
based on conspiracy to commit a listed offense, the indictment against appellant alleged
he committed theft, not that he conspired to commit theft. One of the aspects of the
hypothetically correct charge under which we must measure the sufficiency of the evidence
is that it be "authorized by the indictment." Malik, 953 S.W.2d at 240.
3. In that respect, we cannot agree with appellant's contention that none of the
accomplice witnesses admitted to involvement in the combination. Cardosi's testimony she
assisted Morris with delivery of stolen vehicles to Carson County admits her involvement.
4. Appellant cites McLaren v. State, 2 S.W.3d 595 (Tex.App.-El Paso 1999), rev'd
sub nom. Otto v. State, 95 S.W.3d 282 (Tex.Crim.App. 2003), in which the court of appeals
found there was no evidence McLaren performed the overt act alleged in an indictment
charging him with organized criminal activity through a conspiracy to commit aggravated
kidnaping. Prosecution for organized criminal activity based on conspiracy to commit one
of the underlying offenses listed in Penal Code Section 71.02 requires proof of the
defendant's performance of an overt act. Tex. Penal Code Ann. § 71.01(b) (Vernon Supp.
2004). As previously noted, appellant clearly was indicted and tried on the theory he
committed theft, not that he conspired to commit theft. The use of the phrase "overt act"
in the indictment and charge, though not complained of, was thus inappropriate. See State
v. Duke, 865 S.W.2d 466, 467-68 (Tex.Crim.App. 1993). 
5. A pretrial statement Montieth gave to investigators indicates she later told her
mother to report the truck stolen and to name appellant as "the suspect." 



nd PCT had in fact retained Conner to represent PCT in legal proceedings related
to the trust and its assets. 
          On August 12, a hearing was held in the 64th District Court of Hale County, in the
underlying proceeding, on Landowner’s Rule 12 motion and motion for a default judgment
against PCT. Ulmer was the sole witness. He testified he was PCT’s trustee since its
inception. He further testified that, although he had not been served by Landowners as
PCT’s trustee, he retained Conner to represent PCT and instructed Conner to file an
answer on PCT’s behalf. Judge Cherry’s order was introduced as evidence that Ulmer was
PCT’s trustee with authority to retain counsel and that, in fact, Ulmer had retained Conner
to represent PCT. 
          On August 19, 2005, the trial court held that Conner failed to meet his burden of
proof of establishing his authority to represent PCT under Rule 12, ordered that Conner
not appear on PCT’s behalf, and struck the answer filed by Conner on PCT’s behalf. As
a result, the trial court deemed the allegations in Landowners’ petition to be admitted. The
trial court then entered a default judgment against PCT finding that the trust failed to
appear and answer. 
          On October 26, 2005, at PCT’s request, the trial court issued findings of fact and
conclusions of law which found, in part, that: (1) Say was served with Plaintiff’s petition, in
the alleged capacity as PCT’s trustee, on January 17, 2003, (2) Say filed a verified answer
indicating he was not liable in the capacity served, (3) Conner filed an answer on behalf 
of PCT on April 30, 2003, (4) on June 29, 2005, Landowners filed a verified Motion for
Attorney to Show Authority, (5) on August 3, 2005, the 99th District Court, Lubbock County,
entered a declaratory judgment declaring that Ulmer was the trustee of PCT, and (6) Say
has never been trustee of PCT.
Discussion
          Addressing PCT’s points in a logical rather than sequential order, we will begin with
issue five. 
          Point of Error Five - Ulmer’s Status as Trustee
          By its fifth point of error, PCT contends the trial court erred because there was no
evidence or, in the alternative, there was insufficient evidence to support the trial court’s
finding that “anyone other than Ulmer was the trustee of the Trust.” Although unartfully
worded, we construe this point as contending that the trial court erred by finding that Ulmer
was not the trustee. The trial court made no such finding. Furthermore, even if we liberally
construe PCT’s point of error as attacking the trial court’s finding that someone other than
Ulmer was trustee, we reach the same conclusion because the trial court did not make that
finding either. Because the trial court did not make a finding consistent with any
construction of PCT’s fifth point of error, that point of error is overruled.
          Point of Error 4 - Rule 12 Motion - Striking of Pleading
          By its fourth point of error, PCT contends the trial court erred by striking the original
answer filed on behalf of the trust by Jeffrey Conner pursuant to Rule 12. We review the
trial court’s granting of a Rule 12 motion for abuse of discretion. Air Park-Dallas Zoning
Committee v. Crow Billingsley Airpark, Ltd., 109 S.W.3d 900, 907 (Tex.App.–Dallas 2003,
no pet.); City of San Antonio v. River City Cabaret, Ltd., 32 S.W.3d 291, 293
(Tex.App.–San Antonio 2000, pet. denied). A trial court abuses its discretion if it reaches
a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of
law, In re Cerberus Capital Management, L.P., 164 S.W.3d 379, 382 (Tex. 2005), and/or
there is a clear failure by the trial court to correctly analyze or apply the law. In re Jobe,
42 S.W.3d 174, 178 (Tex.App.–Amarillo 2001, orig. proceeding). 
          Rule 12 permits a party to argue before the trial court that a lawsuit is being
prosecuted or defended without authority. At a Rule 12 hearing, the challenged attorney
has the burden of proving sufficient authority to prosecute or defend the suit on behalf of
his client. Id. If the challenged attorney fails to meet his burden of proof, the trial court
shall refuse to permit the attorney to appear in the cause, and shall strike the pleadings if
no person who is authorized to prosecute or defend appears. Id. 
          Typically, in response to a Rule 12 motion, an attorney satisfies his or her burden
to establish their authority to prosecute or defend a suit through an affidavit from the client
indicating the attorney was retained to provide representation in the case, and/or through
testimony of the attorney. See, e.g., Boudreau v. Federal Trust Bank, 115 S.W.3d 740,
742 (Tex.App.–Dallas 2003, pet. denied) (attorney’s burden satisfied by affidavit and
testimony), Spigener v. Wallis, 80 S.W.3d 174, 184 (Tex.App.–Waco 2002, no pet.)
(affidavit and testimony). Here, the disputed issue was not whether Conner had been
retained by PCT to commence representation, the issue was whether Ulmer was
authorized to request that representation on behalf of the trust. 
          At the Rule 12 hearing Ulmer was the only witness. He testified Say had never
served as PCT’s trustee. He further testified he created PCT in 1992, served as its trustee
since inception, retained Conner to file the answer on PCT’s behalf, and that Conner’s
retention was ongoing. In addition to Ulmer’s testimony, the trial court received into
evidence a copy of the Order Granting Plaintiff’s Petition for Declaratory Judgment, 
wherein a Lubbock County District Court issued a declaratory judgment that Ulmer was
PCT’s trustee since its inception, had the power to retain attorneys, and had retained
Conner to represent PCT in “legal proceedings relating to the trust and trust assets.” 
          In response, the Landowners contend Ulmer’s failure to volunteer that he was PCT’s
trustee at a January 2003 hearing or in a brief also filed in January 2003, is conclusive
evidence Conner was without authority to represent PCT at any time in the proceedings. 
However, in January 2003, Ulmer had been served solely as an individual and the trust had
been served by serving Say, a person the trial court ultimately found had never been
trustee. At that time, neither Ulmer nor the trust had ever been asked or served with
discovery requesting the identity of PCT’s trustee. In March 2003, Ulmer timely responded
to Landowners’ discovery requests stating he was PCT’s trustee, duly authorized to act on
PCT’s behalf, and that Say had never served as PCT’s trustee.
          The Landowners further assert that, as a matter of law, Ulmer is estopped from
claiming he had the authority to act on behalf of the trust because he was aware Say was
identified as PCT’s trustee in the deed when it was filed. Estoppel by deed stands for the
general proposition that “all parties to a deed are bound by the recitals therein, which
operate as an estoppel, working on the interest in the land if it be a deed of conveyance,
and binding both parties and privies; privies in blood, privies in estate, and privies in law.” 
Angell v. Bailey, 225 S.W.3d 834, 841 (Tex.App.–El Paso 2007, no pet.). 
          The general rule in Texas is that recitals in a deed are binding only when the parties
or their privies thereto claim under such deed. Lambe v. Glasscock, 360 S.W.2d 169, 172-73 (Tex.Civ.App.–San Antonio 1962, writ ref’d n.r.e.). Strangers to a deed, like the
Landowners here, have no right to establish title by recitals in such deed. Angell, 225
S.W.3d at 840. Moreover, while a deed may furnish evidence of the recited fact, it may not
be competent evidence of the recited fact as between a party to the deed and a stranger. 
See 30 Tex.Jur.3d Deeds § 135 (1998). In making a determination whether estoppel
should apply, the court must “focus on the intention of the parties to the instrument and ask
whether the parties intended to bind themselves to the terms of the recital at issue.” 
Angell, 225 S.W.3d at 842. Here, Landowners were neither parties nor privies to the
deed.


 Neither was Ulmer a party to the deed and the only evidence of the parties’ intent
in the record is Say’s affidavit indicating the parties did not intend to be bound to the
reference.
          In addition, a “recital” in a deed is a formal statement used to explain the reasons
upon which the transaction is based, Angell, 225 S.W.3d at 842; EMC Mortg. Corp. v.
Davis, 167 S.W.3d 406, 415 n.5 (Tex.App.–Austin 2005, pet. denied), and sets forth “some
matter of fact.” McMahan v. Greenwood, 108 S.W.3d 467, 484 (Tex.App.–Houston [14th
Dist.] 2003, pet. denied) (quoting Black’s Law Dictionary 1270 (6th Ed. 1990)). See also
Angell, 225 S.W.3d at 842. The deed’s reference to Say as PCT’s trustee is neither a
statement of fact nor a recital explaining the reasons underlying the property’s transfer from
F&PRR to the trust. At best, the reference to Say as trustee may be some evidence of his
status if properly introduced, Bennett v. Romos, 151 Tex. 511, 252 S.W.2d 442, 445-46
(1952), but the reference does not work as an estoppel against Ulmer. Moreover, given
Say’s affidavit and Ulmer’s testimony that the reference was a mistake in drafting
committed by a third party in Illinois, the reference is of questionable evidentiary value.
          Based upon the Lubbock County District Court’s order declaring that Ulmer was
PCT’s trustee since its inception, Ulmer’s sworn statements in response to Landowners’
discovery requests that he is PCT’s trustee, and his testimony at the August 12 hearing
that he has been PCT’s trustee since its inception, we find Ulmer was authorized to request
legal representation on behalf of the trust. Accordingly, we find that the trial court’s finding
that Conner failed to meet the burden of proof necessary for continued representation in
face of a Rule 12 motion


 to be an abuse of discretion. Accordingly, PCT’s fourth point
of error is sustained. 
          Point of Error 3 - Default Judgment
          Before granting a default judgment, a trial court has a mandatory duty “to ascertain
and determine that [1] the defendant has been duly served with citation and [2] that he
does not have an answer on file.” AAA Navi Corp. v. Parrot-Ice Drink Products of America,
Ltd., 119 S.W.3d 401, 402 (Tex.App.–Tyler 2003, no pet.); Autozone, Inc. v. Duenes, 108
S.W.3d 917, 920 (Tex.App.–Corpus Christi 2003, no pet.). To sustain a default judgment,
a plaintiff in the trial court must strictly comply with the rules relating to the issuance of
citation, the manner and mode of service, and the return of process. Vespa v. National
Health Ins. Co., 98 S.W.3d 749, 751 (Tex.App.–Fort Worth 2003, no pet.); Laidlaw Waste
Systems, Inc. v. Wallace, 944 S.W.2d 72, 73-74 (Tex.App.–Waco 1997, pet. denied). 
Normal presumptions favoring valid issuance, service, and return of citation do not apply. 
Vespa, 98 S.W.3d at 751. Moreover, a default judgment is improper against a defendant
who has not been served in strict compliance with the law, even if he has actual knowledge
of the lawsuit. Price v. Dean, 990 S.W.2d 453, 454 (Tex.App.–Corpus Christi 1999, no
pet.). 
          Furthermore, it is well settled that a trial court commits reversible error when it
enters a default judgment after the defendant has filed an answer. Padrino Maritime, Inc.
v. Rizo, 130 S.W.3d 243, 246 (Tex.App.–Corpus Christi 2004, no pet.); In re $475,001.16,
96 S.W.3d 625, 627 (Tex.App.–Houston [1st Dist.] 2002, no pet.); Terehkov v. Cruz, 648
S.W.2d 441, 442 (Tex.App.–San Antonio 1983, no writ); Corsicana Ready Mix v. Trinity
Metroplex Division, General, Portland, Inc., 559 S.W.2d 423, 424 (Tex.Civ.App.–Dallas
1977, no writ). A defendant has the right to file an answer at any time before a judgment
by default. $429.30 In U.S. Currency v. State, 896 S.W.2d 363, 365 (Tex.App.–Houston
[1st Dist.] 1995, no writ); Dowell Schlumberger, Inc. v. Jackson, 730 S.W.2d 818, 819
(Tex.App.–El Paso 1987, writ ref’d n.r.e.).
          We review the granting of a default judgment for an abuse of discretion.


 Agraz v.
Carnley, 143 S.W.3d 547, 551 (Tex.App.–Dallas 2004, no pet.). We do not indulge the
usual presumption of the validity of the judgment; Lorentzen v. Kliesing, 810 S.W.2d 16,
18 (Tex.App.–Houston [14th Dist.] 1991, no writ); see 5 Tex.Jur.3d Appellate Review § 544
(1999), and “[e]very step of the proceeding from process to final judgment is open to
examination.” Id. at § 582. Moreover, in a post-answer default judgment situation, the
plaintiff is required to prove all aspects of his case even though the defendant fails to
appear at trial. Karl and Kelly Company, Inc. v. McLerran, 646 S.W.2d 174, 175 (Tex.
1983) (judgment cannot be entered on the pleadings). 
          The entry of a default judgment in this case was error for either of two reasons. 
Either the Landowners never had proper service on PCT and therefore the trust was never
subject to the jurisdiction of the trial court, or PCT voluntarily appeared through Conner’s
answer filed on behalf of the trust, and that answer was improperly stricken.
          Say filed an answer in response to Landowners’ petition which included a general
denial. Despite Say’s attached affidavit stating he was not PCT’s trustee and Ulmer’s
sworn disclosures that he was PCT’s trustee, Landowners did not seek a determination of
Say’s status in relation to PCT, nor did they urge a ruling on Say’s request that he be
dismissed. Ultimately, the trial court found that Say never was PCT’s trustee. Therefore,
service of process on Say could never satisfy the jurisdictional requirement of service of
process. Based upon this record, service on Say was insufficient to support a default
judgment. See Price, 990 S.W.2d at 454. 
          Alternatively, the trust appeared voluntarily when Conner filed PCT’s second
answer, dispensing with the necessity for the issuance of service of citation on the true
trustee. See Tex. R. Civ. P. 121. See also Ray Malooly Trust v. Juhl, 186 S.W.3d 568,
571 (Tex. 2006). Although Landowners later challenged Conner’s authority to file the
answer (a challenge which we have rejected above), they cannot have it both ways. They
cannot say Conner had the authority to file an answer subjecting the trust to the jurisdiction
of the court on the one hand and then take a totally inconsistent position by saying Conner
had no authority to defend the suit on the other. Furthermore, they did not except to the
answer itself. See generally Roark v. Allen, 633 S.W.2d 804, 809-10 (Tex. 1982); Texas
Farmers Ins. Co. v. Cameron, 24 S.W.3d 386, 398 (Tex.App.–Dallas 2000, pet. denied)
(failure to specially except to a pleading waives any defect in the pleading). PCT’s second
answer superceded its first answer; see Tex. R. Civ. P. 62 and 65, and was filed prior to
the trial court’s default judgment. Accordingly, the trial court committed reversible error by
entering a default judgment against PCT after PCT had an answer on file.  
          Landowners’ contention that PCT’s second answer did not identify its trustee is of
no moment. The fact that the defendant’s “answer” omits certain formalities required by
the rules of procedure does not render that answer insufficient to prevent a default
judgment. Santex Roofing & Sheet Metal, Inc. v. Venture Steel, Inc., 737 S.W.2d 55, 56-57 (Tex.App.–San Antonio 1987, no writ). The proper practice is for plaintiff to except to
the answer or move to strike before taking a default judgment for want of an answer. Id.
at 576. 
          PCT’s third point of error is sustained. Disposition of PCT’s remaining issues are
pretermitted.



 

Conclusion 
          Accordingly, the default judgment is reversed, and this cause is remanded to the
trial court for further proceedings consistent with this opinion. 


                                                                                      Patrick A. Pirtle

                                                                                            Justice